Our next case is NCS Multistage Inc. v. TCO GROUP. Counselor Spivey, did I pronounce your name correctly? Spivey. Spivey. Had a 50-50 shot at it, didn't I? I've been called worse, Your Honor. All right, you reserved three minutes of time for rebuttal. I did. We're ready when you are. Good morning, Your Honors. May it please the Court. Jonathan Spivey of Postinelli PC for Appellant TCOAS. The District Court committed a series of legal errors that fundamentally affected the liability determination below, and today I want to focus on three of those errors. The lower court's claim construction errors, the denial of JMAL on the application of the 102B1B exception, and the denial of JMAL in new trial on indirect infringement, and all of which we believe necessitate reversal here. The lower court erroneously construed the casing string limitation in claims 28 and 29 of the 445 patent, and rather than giving the words of a claim their ordinary meaning in the context of the claim in the whole patent document, the lower court improperly included both a sizing restriction and a down hold to deployment requirement, neither of which were part of the intrinsic record of the asserted 445 patent. Mr. Spivey, if we were to agree with you on claim construction on the position that you just articulated, what happens to the similar claim construction in the companion case that we're hearing this morning? Well, I think the construction should be applied to both cases because that's what happened in the lower court in the previous case. The nine case preceded ours, and the claim construction of casing string was essentially the same construction we had in our case. Although we did file a supplemental briefing, but essentially the court just used the same construction for casing string. So it should apply to both cases. Would a vacate on the claim construction address all the other issues? It will address with respect to invalidity as well as infringement as well because that construction was improper for invalidity and infringement because based on the construction that we are proposing. Just following up on Judge Reyna's question, we want to get a sense of which issues we actually need to resolve here. So I think that Judge Reyna was getting at the possibility that if we were to vacate in remand and say that there was error with respect to the claim construction on casing string, does that mean that we need to also cite the 102B issues? Just give us kind of an overall view of what issues we have to resolve here. So if the casing string construction is modified, I do believe the court has to address the 102B1B application of the exception. And the reason for that is because the exception is applied by the court and then the instruction was incorrect as a matter of law, and that exception allowed them to exclude certain pieces of prior art during the case. And if they haven't satisfied, for instance, the publicly disclosed requirement under Sandhill or they haven't satisfied what I would say is a statutorily required comparison of what the inventor disclosed compared to the 102A prior art that they were wanting to exclude, so it plays a role that the court needs to have guidance on whether or not the 102B1B exception applies here. And just kind of following up further on what Judge Reyna was asking you in terms of the interaction with the companion case, the nine case, I'll call it, is there any daylight between that 102B issue in this case and the 102B issue in the companion case to your… I don't believe there was any daylight because the same facts that they were relying on for evidence to satisfy the publicly disclosed was in the nine case previously, the same as in our case, as well as the comparison. While we argue the comparison wasn't satisfied, I'm not sure if that was in the nine case. But that's the second requirement under 102B1B exception. I want to turn back to sort of the ordinary meaning of case and string. I don't believe it was restricted by a pipe of a certain size. And here the court obviously included the greater than or equal to four and a half inch in outside diameter and also included the requirement that a downhole tool be deployed through it without restriction. We believe the intrinsic evidence here, there's no reason for this court to depart from the plain and ordinary meaning of case and string and adopt it to mean a pipe that is used to line the walls of a drill well. Now, if the court agrees with us in our claim construction, I believe there's an opportunity to reverse the district court's JMAL of no invalidity. And I think that's appropriate here because based on NCS's expert testimony of why a particular piece of prior art, for example, the Shell Brunei TDPPO, didn't read on the limitation of the claims when applying the lower court's narrowing claim construction for case and string. If the greater than equal to four and a half inch outside diameter restriction is moved, as well as the downhole tool deployment restriction is required, there's enough evidence in the record where no reasonable juror could find less than a clear and convincing evidence of invalidity under correct construction. And we believe that the court can obviously reverse the JMAL of no invalidity. Are you saying that we should construe the claim ourselves, that we should reach our claim construction if we were to vacate and remand? Yeah, I think that the court has to construe the correct construction is that it's a pipe that's used to line the walls of a drilled well. So under that construction, if you take one of the pieces of the prior art, for instance, like I said, the Shell Brunei, and simply just take what their experts said is why it didn't satisfy the claim limitations for invalidity, if those restrictions are removed, you could take his testimony and see that it's invalid under a correct construction. Wasn't there an issue about the difference between tubing and casing? And there was an argument that tubing could be smaller. Couldn't the jury still find that even without a size restriction, the prior art cited is not casing, it's tubing, and therefore it doesn't invalidate? No, because the tubing was all based on size. It was all based on whether it was... I mean, there was an argument that there's a distinction between pipe used for tubing and pipe used for casing. I thought there was expert testimonies suggesting that that distinction mattered. And I'm not disagreeing with you necessarily about the size. I'm just trying to figure out if there's any harmful error here, or more particularly, whether you're entitled to jail on this. Because it seems to me that even if you take away the size restriction and say that term can be of any size, the jury could still have found this was... The prior art wasn't casing and therefore didn't invalidate this casing patent because it was only used for tubing. I understand you disagree with that and say those things can be interchangeable. But I think there was testimony on the other side that the jury could have relied on. Well, I disagree with that. And that's because the... You disagree with the factual finding or that there was testimony to that effect from the other side? Yeah, their expert testified to that. Why couldn't the jury have relied on that testimony to find, without the size restriction arguments, that the prior art was still just tubing and not casing? It's because the expert's testimony with regard to tubing tools is only with regard to the size. Okay. So maybe that's why it's harmful. But I don't know that that necessarily entitles you to JMAW because there's still a distinction in the record between tubing and casing. And I don't think we can make that factual determination in the first place. But if the size restriction is removed and in casing string, if there's no requirement that it be greater than or equal to four and a half inches, let's say it's three and a half inches, well, the Shell Brunei tool was three and a half inches. And so if the size restriction is removed, what they argued for why it was not invalidating is out of the casing string limitation construction, then it could be invalidated. But couldn't we just do, which I think is what Judge Hughes is alluding to, we could just send it back, right? And let the court below deal with it in light of the claim construction that we're saying is appropriate. And then that's how it can all be addressed and kind of proceedings consistent with our opinion. Absolutely, Your Honor. It is definitely an alternative that you can vacate and send the JMAW, the invalidity back for the court to consider. Absolutely. I want to turn to another claim construction error just briefly, and this is the rupturing force. It was construed to mean a hydraulic pressure or impact force sufficient to rupture the ruptured disc. And that was in the court's claim construction. And it's Appendix 17. And that was a claim construction that was argued for by NCS and adopted by the lower court. But during pretrial, there was also a motion in limine that was filed by NCS where they sought to exclude TCOAS from presenting evidence that the rupturing force used could also be the impact force. We obviously oppose that. In supporting that position, they argued that with respect to Claim 29, the court's construction of rupturing force was limited to hydraulic pressure. But rupturing force, when the court in the Markman and even in its claim construction order at Appendix 17, that was not what the court said rupturing force was. It could be by both hydraulic pressure and impact force. And during the trial, the lower court changed its construction such that the prior art that we had, we couldn't use it because it included an impact force to rupture the disc. But our expert wasn't allowed to testify about that because the court mid-trial changed it to be singularly hydraulic pressure. Also, is there another factual dispute about what was actually sold in terms of whether it was the full pipe or only half the pipe? Is there such a factual dispute? Not about the pipe. I think what they argue is that there was, I guess, corroborating evidence about the tools that were sold. And it was the tools that are connected to the casing string which allowed the casing string to be extended into the horizontal portion of the well bar. And it was whether or not those tools connected to, based on the construction, greater than or equal to four and a half inches. So I don't think there was a dispute about the pipe or what was being sold. I think it was the tool that was being connected to the casing string. Okay, thanks for the clarification. But we think that the court narrowed its construction of rupturing force and it excluded impact force. And our expert wasn't allowed to present the evidence, the invalidated evidence, because the tool used impact force, not just hydraulic pressure, but impact force. And this was acknowledged by the court. During the trial, when we had a sidebar, counsel argued for that when the court construed claim 29, it was limited to hydraulic pressure. But that's not what the court's claim construction order says. And that is also not what the court in ruling on the motion in limine when he denied their motion in limine to say, no, it's not just limited to hydraulic pressure. Because we assume he construed it to be hydraulic pressure and impact force, but he changed it mid-trial. And he even acknowledged that he didn't know how to fix it during trial, but then he upheld the objection. I see I'm getting into my rebuttal time, but I do, if I can be allowed to, just talk about the 102B1B exception, because I believe the court has a rule on that. They have not. Sanho is, I think, instructive here. And what happened in Sanho happened here. There is no evidence that they satisfied the publicly disclosed requirement of Sanho. Additionally, there is also the statutorily required comparison where they have to compare the details of what the inventor disclosed, which was allegedly the tangible tool, to the details of the TDPPO prior art that they wanted to exclude under the exception. And that didn't happen here. So I'd like to reserve the remainder of my time for rebuttal unless there's questions. Just one quick question. Sure, go ahead. So we talked about the fact that I think you contend we need to resolve certain claim construction issues such as casing string, and then also this 102B1B issue. What about the indirect infringement verdict? And I'm not asking you to go into a full-blown argument right now. I'm just asking you to tell us what, if anything, you think we need to resolve with respect to that. Yeah, the indirect infringement, as well, needs to go back because under this Court's opinion in Roche, they talked about everything that's submitted as far as the record evidence, the stuff that happened prior to the damages period here. All of the evidence that was submitted to the jury was prior to the damages period here. And that is, I think, violative of Roche in this Court's opinion. Couldn't we just hold the infringement question in advance until the District Court decides the invalidity portion? That's an option, Your Honor. Yes. Okay. Okay, thank you. Good morning, Your Honors. My name is Domingo Agostero, representing the plaintiffs NCS at the law firm Blank Rome. A lot of time, Mr. Spivey, spent on the casing string construction, so I'm going to use the majority of my time on that. First thing I want to make clear is that the claimed invention is not casing or tubing. It's a tool that goes down as part of the casing string. And so the issue at trial was, are the TDPPO tubing tools, are they configured for casing string? Do they ride into the hole and get cemented into the well as part of the casing string? Or are they the tools that go down that conduit to do drilling operations? So the reason you have casing string is to line the wellbore, keep it intact, and make sure you have a smooth surface. The terms in the patent that were subject to construction by the District Court, that's casing string, right? That's correct, Your Honor. So we had an O2 micro dispute about what casing... The issue here is about the construction of casing string. That's correct. Yes, sir. And so we didn't know... It sounded like you were trying to maybe argue that we missed a boat here. We should be looking at the construction of some other element. No, Your Honor. I'm not arguing that. I'm just trying to distinguish between the tools that are in the inventive tools versus what casing string is. And so there was a dispute about what casing string is. And the undisputed evidence showed that casing string has a standard common size of four and a half inches or greater. And the reason that is, Your Honor... You can't put that in the patent claims. That's not in the patent claims. The term casing string is in the patent claim. The description of the invention in the specification talks about common sizes of casing being greater than four and a half inches. The extrinsic evidence showed, which Judge Albright weighed, that standard industry size for casing is four and a half inches or greater. And that's because you need it to be big enough for tubing tools to go down. So it was undisputed that that was the standard size. And there were rare exceptions where some drillers would operate with the casing lower than... If you wanted to claim that, it should have been in your claims. I mean, you're asking us to read into claim language terms from the specification and extrinsic evidence. And generally, we don't do that. I understand that, Your Honor. The problem is we had our experts saying two different things. So we had an O2 micro dispute. Our argument, which was rejected, I want to emphasize this too, our argument was to cap the casing string size at four and a half inches. And we lost that argument. Judge Albright rejected it. So he adopted that casing string is customarily the standard size, greater than four and a half inches. What do you do if we think that's wrong? Yeah, let's just assume I think that's wrong, that you don't define casing string with any certain diameter in your patent. And there's evidence showing that even though it's usually greater than 4.5, it can be less. And so I read your claim as encompassing all of those diameters. So what effect does it have on that case, on this case? That wasn't a pun. I'm not Judge Lurie. If we conclude that claim construction was wrong. Well, if we conclude that claim construction was wrong, let me back up a second. So the court's construction does encompass all casing string sizes.  But I'm not interested in Judge Albright's claim construction anymore. Hypothetically, for purposes of what I'm asking you, he's wrong. The plain and ordinary meaning doesn't have a limit to the size of the casing string. You didn't put it in the claims, it's not there. I don't think it would change anything, Your Honor, because they can't show any prejudice because there were so many other reasons. This all funnels down to whether the tubing tools were invalidating tools. Whether it was small or not was one of several factors that showed that the tools do not invalidate the claims. First and foremost, they couldn't establish. It was a general verdict, right? So how do we know that the jury didn't buy off on your argument that the prior art isn't casing because it's too small? Well, I think the test is whether or not there was substantial, sufficient evidence for them to find whether or not there was invalidity. And TCO didn't ask for a special verdict on its defense. But I think our precedent usually says that if there's an error in the claim construction and we can't tell whether the error infected the jury's verdict or not, we send it back. I think the federal circuit law says that if there's an error in the jury instruction, then the question is, was there substantial evidence for the jury to find non-obviousness? That's under the Teleflex case. And in that case, the court looked at all of the evidence and weighed whether there was sufficient evidence to find non-obviousness, notwithstanding the claim construction. And so in this case, we have a plethora of evidence that shows, first and foremost, that there was no prior art showing, no qualifying prior art because they couldn't establish a single invalidating sale was corroborated by sufficient drawings, sufficient testimony to establish that that prior art sale happened before the date of invention. And by the way, this is separate from the 102B1B issue. When you get past, if you can get past the 102A prior art, which I don't think you can, then it wasn't just about size. It was about whether or not the tools, the TDPPO tubing tools, were configured for casing string. And there were several design elements in the drawings that showed it's not, that it has to ride down the smooth conduit. It's not designed to be cemented in the well, that it has restrictive surfaces, that it's too narrow because if you, and our expert did this, if you put the TDPPO tubing tool on a casing pipe, the inner bore is narrower than the casing pipe. So all of those facts, the jury weighed to consider whether or not the TDPPO tubing tool was either anticipating or obviousness. And then there's a very big record of non-obviousness as well. So counsel, if we disagree, following up on what Judge Hughes asked you just a few minutes ago, with there being some type of size limitation being appropriate in the clean construction associated with casing string, why don't we just send it back and let the district court deal with it once we've told what the appropriate clean construction is on casing string? Even if we adopted TCO's construction, which is pipe, just casing string is pipe that is run to line a well, it's going to be a rehash of the same exact trial because the experts are going to testify, they testified at trial that a TDPPO three and a half inch tubing tool is configured for casing. We couldn't object to that because it's part of the construction. The jury either accepted or rejected that evidence. We said it's not configured for casing because of several reasons, including the size. So I don't think the trial is going to change at all. It's going to be the same regardless of that construction. And this was the point in our briefing. But the trial could change in the sense of there's a different claim construction that now is presented. Couldn't that lead to potentially a different result? You're indicating there's no way. I don't see any way, Your Honor, because it's going to be the same trial, just a different jury. The arguments, the non-infringement and the invalidity arguments do not change with our construction or theirs. It would have been different jury instructions. Why couldn't different jury instructions change the potential outcome? Why is it a foregone conclusion, as you indicate? On the claim construction? You basically just told us that even if we say the claim construction is wrong, give a different claim construction, that the result has to come out the same. And I'm not understanding why that it would have to come out the exact same. I believe it would come out the same because the evidence would come out the exact same way. And this jury showed that there was substantial evidence to find no invalidity. So a different jury construction, let me put it a different way. If their construction is pipe, that lines the well. That's inherent in the construction that Judge Albright issued. The only difference being that he specified that customarily it's greater than 4 1⁄2 inches. But they're going to go to trial and make the same argument that a 3 1⁄2-inch tool is configured for casing. We're going to make the same argument that a 3 1⁄2-inch tool is too small, it's too narrow, it's not designed to be cemented in the well. And the evidence comes out identical to what happened in the previous jury trial. So I don't believe that it's going to change anything because there's just no prejudice to the claim construction that Judge Albright issued. And I want to just reiterate that I think things would have been different had NCS won its construction and had the size of casing stream capped because we would have precluded them from arguing a 3 1⁄2-inch tool is not suitable for casing, but we couldn't do that. So their expert was allowed to testify that size didn't matter. So in addition to the casing stream construction, Mr. Spivey mentioned the rupture burst pressure. This one's a bit confusing because the court issued two constructions, independent constructions for the term rupturing force. Judge Albright construed it as a hydraulic or impact force and then Claim 29, which included the term rupturing force, he separately construed that as only a rupturing force. Only including the impact force, which made sense in the context of the patent and in the claim because, I'm sorry, Claim 29, a hydraulic force. Because Claim 29 talks about the rupture burst pressure. And when you're talking about rupture burst pressure, that's in reference to a hydraulic pressure. So for example, a disc could have a rupture burst pressure of 10,000 psi, which means anything above that hydraulically will smash the disc into pieces. So at trial, their expert tried to take the separate rupturing force construction and poured it back into Claim 29 after Judge Albright had already construed it to be limited to a hydraulic force. So there was no change in construction. His original construction, which is Appendix 18, is identical to the one he had at trial. The reason he excluded their expert from changing the construction, and it's the same construction in the jury instructions. They're all identical. So there's nothing wrong with that construction. It's the correct construction. What's your best argument with respect to the public being able to see and understand the sole device, turning down to like the 102B issue? Yes, Your Honor. So Sanho, the facts of that case are important because the inventor sold a single hyperdrive to Sanho. And the patent covered the circuitry internal to the hyperdrive. Sanho had ordered 15,000 units, but they were never delivered. And so the court weighed those facts to determine if that was a sufficient public disclosure. Here, we contend that there are numerous facts that are very different than Sanho that show as a public disclosure. One being that it wasn't a confidential sale. The tubes, the airlock tools, they're about this big, about 2 and 1⁄2 feet, 3 feet across. And they're pretty big, 4 and 1⁄2 inches. Were delivered to Tundra and that when you take the caps off, you can see everything inside. So you can see from the top and the bottom, you can see the rupture disc, the seal rings, you can see the shear ring. There's nothing that's hidden like circuitry. And we sold dozens of those over the course of 2012. And so we think the facts are different. Also, sorry, Tundra was given the instructions on how to disengage the rupture disc and shear it so that the disc accelerates down and cracks open. So everything was there out on display and we sold dozens to Tundra. So we think that it's different than the Sanho sale. And also the jury instruction, so we had this before Sanho came down from the federal circuit. The jury instruction is consistent with Sanho that it's not limited to 102A disclosures, that it's got to be a public disclosure. And so there was sufficient evidence, we believe, there for the jury to determine that the sales to Tundra resulted in a public disclosure. And also, we talked about this with respect to casing string as well, but we don't know, we think the jury could have accepted the Tundra sale and disqualified the Apache sale. But the Apache sale, independent of whether or not it was a disqualifying disclosure, had several problems, including whether it qualified as prior art, whether it mapped to the claims, because it was a small tubing tool. Our experts showed that it had a very narrow restriction, smaller than the casing string, so it couldn't be configured for casing string. And so there were several independent reasons of the disqualifying sale that showed the Apache sale wouldn't have qualified as prior art in the first instance. You said that there was evidence of the teaching of the features of the invention to Tundra, right? Yes, Your Honor. What was that evidence? So that evidence is being able to visibly see the tool, and Tundra has to run the tool itself, and providing them the instructions on how to use it, which if you give your operator instructions on a disengaging pressure, then they know to pressure up to a certain amount, not higher, because if you go higher, you're going to prematurely shatter the disk. You go to a disengaging pressure, that releases the disk to shatter. And that's all that's in the claims. It's very simple. Do you identify certain JA pages that provide the evidence that you're describing to Tundra? Yes, Your Honor. So Appendix 5620 to 21, 5756 to 57. Also 9552 is a photograph of the rupture disk assembly that the jury see. We had a demo. Now, it is cut away so that it's easier to see, but even with it not cut away, you can very easily see down both tubes, and we showed the jury that. The pump-out instructions are at 9559, and then there's several sales data of all the sales to Tundra. That's at 5617 to 20 are the numerous sales we made over that year, and 5739 is the run of that tool, and I think I said 9559, but 8371. So we had a lot of evidence put together. Is what you're saying that the reason this is distinguishable is this is a tool that has to be operated by the user, and when the user operates it, they're going to see all the patented claim limitations? Yes, Your Honor. The user is going to see everything. It's right there in front of them, because I was going to say... And it's in the instructions? And it's in the instructions. It's very simple. The claim is not circuitry. It's a disk and a shear ring and a seal, and that's it, and then you disengage it to blow off the disk. Do you show evidence that the Tundra sales were actually used in operation? We did. That's 5739 is where they first ran it, and then we sent a bunch of them following that. And I believe, Your Honor... You're out of time. Do you want to sum up? Yes, Your Honor. We didn't really talk about the waiver issues, but TCO's appeal brief throws a lot of appeal issues at the federal circuit, and there are so many issues in there that were not brought up in the motions for new trial or JMOL, and then there's a lack of showing of prejudice and changing the trial outcome. So I think that is a big focus of the appeal, but beyond that, I think that the court's analysis of casing string, that we think that's the proper construction and not going to change the trial outcome. Thank you, Your Honors. Judge Spiro, you have three minutes. Thank you, Your Honor. I want to start with the last thing about the stand-hole requirement. These tools are run down-hole, so once the tool is down-hole in the ground, nobody can see it. But they know how it operates. You know how it operates, but the features of the tool itself, the inside of the tool, are what is required for the disclosure to be publicly disclosed. If you don't... What do they not know? They know that it ruptures at a certain pressure. They know that you send it down, that it's a casing string, that it's of a certain diameter. What claim limitation do they not know from the sale? So they know how it operates, but they don't know the details of the invention itself. The details of the invention with regard to the ceramic disc. You can't see that the ceramic disc is scored such that it ruptured at a certain pressure. You also can't see... You know it ruptures at a certain pressure. Again, you know how it operates, but you don't know the details of the... Does it say something about scoring in the claim limitations? Well, that's part of how the invention works, as well as the taper. What claim limitation would not have been known to the purchaser in Tundra after they got the instructions and operated it? Having the upper end and lower end and the upper and lower ends configured for connection in line with the casing string. And this is obviously point two. Romanette two is the ruptured disc having the ruptured burst pressure. You obviously know the ruptured burst pressure of the disc, but the sealing engagement, you can't see that. You can't see the sealing engagement between the ruptured disc as well as the tapered portion of it. And that was the reason that this tool was cut open so that the jury could see all of that information because that is the part of the invention that was not disclosed. What about the written instruction that your friend on the other side says that were provided to Tundra? About the written instructions. So the written instructions, if I wrote down the citation, I think it was 9552 was one of them. That's 9559. This is an internal email and only NCS is on this email. There are no Tundra people on this email that are talking about the use of the tool. So that wasn't disclosed to Tundra. And additionally, I think Sanho has a requirement that it's got to be disclosed to someone beyond Tundra because that was in Sanho. It was only disclosed to the one party and it wasn't disclosed to anyone beyond that one party in a private cell. These were all private cells. Are you saying there are no instructions that were disclosed to Tundra that would actually reveal all the claim limitations? That's correct. What exactly was disclosed to Tundra? Can you point us to a JA page that shows that precisely? What was disclosed to Tundra were the invoices, which I think they cited as part of it. The invoices of the tools that were sold to Tundra were disclosed to Tundra. And beyond that, that was it. The other testimony came from the inventor about how the tool operated. Do you have a JA page for the invoices? And are you also contending it requires reverse engineering to understand exactly how it happens, like maybe just know the result, but you don't know exactly how it happens? Is that what you're arguing? I'm not arguing that it requires reverse engineering, but there are some details of the invention that were never disclosed to Tundra. And so that's the part that we're arguing that it wasn't publicly disclosed under the Sanho requirement. And you're out of time. We thank the party for their arguments.